AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>ANDREZ GALARZA MIRANDA<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)        3:23-mj- 1045-LLL<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 6, 2022__ in the county of __Duval__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

John E. Curtiss, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/3/2023 @ 1:32pm

_____
*Judge's signature*

City and state: Jacksonville, Florida

Laura Lothman Lambert, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, John E. Curtiss, being duly sworn, state the following:

### Introduction

1. I am a Special Agent with the United States Drug Enforcement Administration (DEA), an investigator or law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), empowered to conduct investigations and enforce federal criminal statutes. I have been a Special Agent with the DEA for the past ten (10) years. During my time as a DEA Special Agent, I have participated in and conducted investigations involving, but not limited to, physical surveillance, undercover transactions, controlled purchases, court ordered pen registers, the use of wire and electronic communication interceptions, and both state and federal search warrants. I received training in the investigation of drug trafficking and money laundering, including, but not limited to, the DEA Basic Agent Training Academy located at Quantico, Virginia, and DEA advanced drug investigations courses, including street level drug enforcement, narcotics interdiction, wiretap investigations, basic telecommunications exploitation, and internet communications exploitation.

2. This affidavit concerns an investigation by law enforcement into a violation of federal criminal law, specifically possession with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) in the Middle District of Florida.

3. The facts set forth in this affidavit are based on my personal knowledge, as well as information, knowledge, observations, and investigations by other federal, state, and local law enforcement officers. Because this affidavit is being submitted solely for establishing probable cause to arrest Andrez GALARZA MIRANDA (GALARZA MIRANDA), I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to support a Criminal Complaint.

### Probable Cause

4. The investigation began in January of 2022, when I received information from a DEA confidential source (CS) that an unknown Hispanic male, later identified as GALARZA MIRANDA, had contacted the CS, via telephone. GALARZA MIRANDA informed the CS that while he was Federally incarcerated he had received the CS' contact information from a fellow inmate. GALARZA MIRANDA informed the CS that he was no longer in prison and that he was capable of supplying the CS with significant quantities of Methamphetamine. GALARZA MIRANDA and the CS agreed to meet in person when GALARZA MIRANDA was in the Jacksonville, FL, area. The CS is cooperating with law enforcement for immigration and monetary consideration and does not have any pending criminal charges. The CS' criminal history includes Sell-Distribute or Dispense Marihuana. The CS has proven to be reliable over the course of 17 years working with the DEA. Information provided by the CS has led to large seizures of narcotics and numerous arrests both domestic and international.

2

### Meeting between GALARZA MIRANDA and CS on February 8, 2022

5. On February 8, 2022, GALARZA MIRANDA and the CS agreed to meet at the Maple Street Biscuit Company, a restaurant in Jacksonville, FL, for the purpose of discussing possible future narcotics transactions. I along with members of the Jacksonville DEA Enforcement Group, established surveillance at the Maple Street Biscuit Company restaurant located at 2004 San Marco Blvd, Jacksonville, Florida.

6. At 10:20 a.m., Special Agent (SA) Jeff Crook and SA John Curtiss met the CS at a neutral location and provided the CS with instructions for the meeting. At approximately 10:35 a.m., SA Crook and SA Curtiss entered the Maple Street Biscuit Company prior to the arrival of the CS and GALARZA MIRANDA. At approximately 10:40 a.m., SA Crook and SA Curtiss observed the CS and GALARZA MIRANDA enter the restaurant. At approximately 11:25 a.m., SA Crook and SA Curtiss observed the CS depart the restaurant while GALARZA MIRANDA remained inside.

7. At approximately 11:30 a.m., SA Crook and SA Curtiss departed the restaurant and met the CS at a neutral location where the CS was debriefed. The CS stated that GALARZA MIRANDA did not have an ID and needed a hotel room. SA Crook and SA Curtiss accompanied the CS to the Magnuson Hotel Jacksonville Downtown, 2228 Philips Highway, Jacksonville, where the CS rented room #170 for Gil. SA Crook utilized an undercover ID to get the room. The CS then departed to pick up GALARZA MIRANDA and drive him back to the hotel. At approximately

12:15 p.m., SA Crook and SA Curtiss observed the CS drop off Gil at the hotel room. Surveillance was then terminated.

9. The CS was debriefed regarding the meeting and stated that GALARZA MIRANDA told the CS that he had traveled from Alabama to attend the meeting. The CS stated GALARZA MIRANDA advised that he had recently illegally crossed the border from Mexico and had then traveled to Alabama to stay with his sister. GALARZA MIRANDA advised that he could arrange for 20 kilograms of crystal methamphetamine and 60,000 fentanyl pills to be shipped via U.S. Mail to an address in Jacksonville, FL. GALARZA MIRANDA further stated that upon arrival of the narcotics, a money courier would arrive in Jacksonville to receive payment, from which GALARZA MIRANDA would receive a brokers fee. The CS reported that GALARZA MIRANDA advised that the methamphetamine was $5,500 per kilogram and the pills were $6 per pill. The CS stated that an agreement to the terms of the transaction were met between the parties. The CS stated that GALARZA MIRANDA wanted to stay in Jacksonville until the narcotics arrived, but that Gil did not have an ID to get a hotel room.

### Meeting between GALARZA MIRANDA and CS on February 10, 2022

10. On February 10, 2022, the CS and GALARZA MIRANDA met again at the Magnuson hotel. During the meeting GALARZA MIRANDA informed the CS that he was working on having the methamphetamine and fentanyl pills mailed to the CS. GALARZA MIRANDA further advised that if the drugs did not arrive

by the weekend, that GALARZA MIRANDA would arrange to have someone from Atlanta drive the drugs to the CS in Jacksonville.

### Traffic Stop and Arrest of GALARZA MIRANDA on May 6, 2022

11. On May 5, 2022, the CS was contacted by GALARZA MIRANDA, regarding the delivery of 15 pounds of methamphetamine to Jacksonville, FL. GALARZA MIRANDA informed the CS that he was driving to Jacksonville from Atlanta and would arrive during the early morning hours of May 6, 2022.

12. On May 6, 2022, at approximately 8:00 AM, the CS received a phone call from GALARZA MIRANDA informing the CS that he and a driver had arrived in Jacksonville and were ready to meet with the CS. Agents instructed the CS to provide GALARZA MIRANDA with the address for the McDonalds restaurant located at 1768 N Davis St. Jacksonville, FL 32209. At approximately 9:50 AM, the CS sent the aforementioned address to GALARZA MIRANDA and told GALARZA MIRANDA that they would complete the transaction in the McDonalds parking lot. GALARZA MIRANDA informed the CS that he and a driver would be in a silver Ram pickup truck and would start heading that direction.

13. Agents working with officers of the Jacksonville Sheriff's Office (JSO), established surveillance in the area of the McDonalds parking lot and at approximately 10:28 AM, I and Special Agent Jeffrey Crook observed a silver Ram pickup bearing Tennessee tags pull into the McDonalds and back into a parking spot. I was able to observe a black male driving the truck and also observed a Hispanic

5

male who appeared to be the same person the CS had met with previously in Jacksonville to discuss narcotics transactions.

14. At approximately 10:30 AM, I observed the Ram pickup depart the McDonalds parking lot heading south on North Davis Street. Moments later a marked JSO patrol car initiated a traffic stop of the Ram Pickup Truck. The driver of the pickup truck was identified as Derry GROSS and the front seat passenger was GALARZA MIRANDA. JSO K-9 officer Linda Morgan asked GROSS for consent to search the vehicle and was denied consent. Officer Morgan utilized a K-9 to conduct and open air sniff of the vehicle and the K-9 alerted to the presence of narcotics.

15. A search of the vehicle was conducted by JSO officers and a duffle bag containing 15.4 pounds of a white crystalline substance was located. Officer McKeon conducted a field test of the substance which resulted positive for the presence of methamphetamine. Both GROSS and GALARZA MIRANDA were read their Miranda rights by JSO officers and placed under arrest.

16. SA Curtiss interviewed GALARZA MIRANDA regarding the narcotics located in the vehicle. GALARZA MIRANDA stated that he knew he had been set up and was planning to deliver the narcotics to the CS for a sum of money. GALARZA MIRANDA stated that he paid GROSS to drive him from Nashville to Atlanta where GALARZA MIRANDA picked up the narcotics. GALARZA MIRANDA stated that GROSS was unaware of the narcotics in the vehicle.

17. Three cellular phones were found inside of GROSS' vehicle. I instructed the CS to place a phone call to the phone that GALARZA MIRANDA had been utilizing to coordinate the deal. SA Crook and I observed one of the phones located in the truck ring with the CS' number displayed. I asked GALARZA MIRANDA if that was his phone to which he confirmed that it was.

## CONCLUSION

18. Based on the foregoing there is probable cause to believe that GALARZA MIRANDA has committed violations of the Controlled Substances Act, specifically possession with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) in the Middle District of Florida.

_____
John E. Curtiss
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me
this 3rd day of February, 2023

_____
LAURA LOTHMAN LAMBERT
United States Magistrate Judge

7